Good morning. May it please the court. My name is Scott Kramer. I represent the appellant, Mr. Harris, who is an inmate at the Pleasant Valley State Penitentiary in California. We believe that Mr. Harris' removal from the prison canteen workforce was race-based and he was treated differently from his fellow white inmates. Counsel, I've got a couple questions about this. Yes, Your Honor. One is factual and one is legal. Let me start with the factual one. It kind of looked to me from the record as though they lied to Harris, told him his removal was race-based, when it wasn't. They told him, well, this has to do with our plan and this racial allocation plan. I can't remember what they called it. But the fact of the matter is they had a black and, what was it, a black, a white, a Hispanic, and an other, and they replaced him with a black, a white, a Hispanic, and an other. Or I think at one point they had a black and three whites and replaced him with a black, a Hispanic, a white, and an other. It's sort of hard to see they were discriminating against blacks when they replaced a black with a black. Well, Your Honor, the sequence of ---- I mean, sometimes you tell an employee that you're firing some reason that makes it sound as though it's sort of general and doesn't make them feel bad, like, well, revenues are down, when it's actually a lie and you're firing the employee because they're no good. Yes, Your Honor. The sequence that you refer to of the canteen workforce is important. When Harris was first hired and started working there, there was an African American, a Hispanic, an other, and a white. Then there's an undisputed fact that between March 22, 2001, to March 8, 2002, 351 days during that time period, it's undisputed, that there was one African American, Mr. Harris, and three whites. So for that entire time period, that's what the workforce consisted of. And, Your Honor, it brings another good point. Mr. Harris was told two different things. For example, the ---- Lying is okay, though. It's not a violation of any constitutional right under the Fourteenth Amendment to lie to an employee. No, Your Honor. We're not arguing the fairness of this decision. We're arguing whether his fundamental right, whether an equal protection argument, not a fairness to a prisoner. Right. What I wanted to know is factually, what cases there for there being discriminating they're discriminating against blacks if they replace a black with a black? Well, he is a class of one, a black prisoner at the state penitentiary. And the reasons why he was replaced by an African American is the essence of our case here. That, for example, you mentioned the reasons he was told. In 2002, the program lieutenant, Mr. Vanderpool, said that Mr. Harris was relieved due to balancing needs. However, when they did the summary judgment depositions, the appeals coordinator said, and this is in 2007, the appeals coordinator said that Mr. Harris was not removed from the canteen for ethnic balancing reasons. So our case is basically that he was removed for ethnic balancing reasons because he was an African American and that he was treated differently from the white inmates, the three white inmates. I'm going to ask you my legal question now. Yes, Your Honor. The prison officials would be entitled to qualified immunity unless they violated a constitutional rule that should have been known to a competent prison official. At that time, as I recall, the law of the Ninth Circuit was that prisons could take race into account in assigning prisoners. Subsequently, to all of the relevant conduct in this case, the Supreme Court ruled otherwise and said that it violates the Equal Protection Clause for the prison officials to take race into account. But no reasonably competent prison official could have known at the time that this fellow was reassigned what the Supreme Court would do a couple of years later. He would be, I think, duty-bound to follow Ninth Circuit law, and Ninth Circuit law was it's fine to take race into account. Yes, Your Honor. We are not reaching the issue of the qualified immunity. The district court did not rule on that, and there is case rule. But this is summary judgment, right? Yes, Your Honor. And so we are reviewing de novo. Yes. And any issue that any legal issue that is fairly in front of us is ripe for decision. So it isn't a complete answer to say, well, the district court didn't ever need to get there. Well, there is case law, Hargis v. Foster, that says if the Ninth Circuit concurs that and basically it says if the Ninth Circuit concurs that Harris has made a valid constitutional claim, then it must remand the case for a finding on the qualified immunity. And that's a 2002 Ninth Circuit case. Well, that predates Pearson, which the Supreme Court said we don't have to follow a lockstep decision-making process of determining the contours of the right and then looking at immunity. We can go right to immunity now, and that wasn't true, I don't think, back in 2002. My question is similar to Judge Kleinfeld's. There also was a regulation that authorized racial balancing, 304.1.1 sub A7, specifically lists ethnic balance as a criterion that is supposed to be followed. And why wouldn't a supervisor at least have qualified immunity for following an existing duly promulgated State regulation, even if, hypothetically, that regulation itself turns out to be improper? Your Honor, we don't believe that the prison canteen manager, the prison officials, follow that regulation. For 351 days, it was one African-American and three white inmates in the workforce. That isn't really an answer, because taking as true your facts on summary judgment, he was told we're doing this for ethnic balance. Ethnic balance is item number seven in this list of things we're supposed to consider. So if they had been violating this regulation and now we're trying to follow it, I mean, that is one, you know. But the reason they were trying to follow it was because the prison's men's advisory sent out three memos to prison officials during that period when there was one African-American and three inmates consisting of the workforce. They didn't – the prison officials didn't voluntarily set the – or replace their – I'm not sure you're getting the argument. It seems to me you've got a dilemma here. Your client says they told me they were firing me for the ethnic balancing reason. The ethnic balancing reason was okay under Ninth Circuit law then. Subsequently, it was bad under Supreme Court law. But since it was okay then under Ninth Circuit law and there was a regulation requiring it, they'd have qualified immunity. The alternative is what the prison says, which is we didn't fire them because of ethnic balancing. We fired them because we knew one of the four of them at least was acting dishonestly and managing the canteen. We couldn't say which of the four, so we got rid of all four. If that's so, it's not racial discrimination at all. So if one of those two things is true, you lose under either one, it seems. Well, we believe that he was – that it was because of the actions of the prison's advisory committee and there's no clear-cut reason given why he was relieved from the canteen workforce. Seven years ago, it's – Oh, yeah, there is. Well, there's two disparate reasons. There's an affidavit of N. Villa. Yes. And then there's – that's in 2007. And in 2002, the program lieutenant said that he was relieved due to balancing reasons. So the thrux of the argument is there's no – he was relieved based on racial reasons. Let's say we don't know which of them it is. Either it was balancing or it was this suspicion they were stealing. Either way, because of qualified immunity for one and non-racial reason for the other, I don't see where you get – Well, that, Your Honor, is why we think the summary judgment should be overturned. That's a material factual issue – that's a material issue of fact that has to be resolved. It's a genuine issue of fact, but I can't see that it's material because you lose either way. No. Well, I – this goes to the reason why he was relieved. And then the other argument is that he was treated differently from the three white inmates that he was relieved from. Weren't they fired, too? Yes, they were fired, but the facts of how they were – just – you could disguise discrimination by just firing them all and starting over again. They – when Mr. Harris was fired, he was the only – the only inmate to receive a – the prison form that gave the reason why he was relieved. Look, I'm assuming they lied. They'd have a good reason to lie because prisons are just hotbeds of race-based gangs and a lot of violence. And so they tell the – they don't tell the whites, well, we got rid of you for racial balancing reasons because that's likely to stir up the Aryan Nation gang. And they tell the black, we replaced you for ethnic balancing reasons rather than calling them a thief. That'll calm him down and cool him out. I'm assuming that they lied, but I just don't see where it helps your case. Well, I believe those give us genuine issues of material facts. Why the summary judgment was – should not stand, Your Honor. Thank you, counsel. Thank you. Good morning. May it please the court, Philip Arthur on behalf of Defendant Alvarado. The court should affirm the district court's judgment granting summary judgment to Alvarado for four reasons. First, even assuming that Mr. Harris was removed from the canteen for ethnic balancing reasons, this was not unlawful. Because Mr. Harris was not discriminated against based on his race, he was replaced with another black inmate. Also, ethnically balancing the canteen furthered the goal of the Equal Protection Clause by ensuring that the positions within the canteen were filled by diverse ethnic background inmates. Secondly, Alvarado did not discriminate against Harris when he removed him from the canteen. Third, Alvarado's removal of Harris from the canteen was narrowly tailored in furtherance of the compelling governmental interest of prison security. And finally, Alvarado is entitled to qualified immunity because he did not violate Harris's equal protection rights and a reasonable person in his position could have believed his conduct was lawful. Why wouldn't we just go right to the last one? I mean, I think the constitutional issue, speaking only for myself, is not an easy one, particularly after the Supreme Court's most recent prison-related, race-related case that Judge Kleinfeld was referring to earlier. And I guess my specific question to you is, even assuming that the regulation is not valid, is unconstitutional as written, does it provide a basis for qualified immunity? I believe even if the regulation was unlawful, the evidence here indicates that Mr. Alvarado removed Harris from the canteen based upon the suspicion of the inappropriate conduct. Now you're asking us to find facts. There are certainly facts in this record from which a fact finder could conclude that he was removed for ethnic balancing. He had just gotten a satisfactory performance evaluation and a raise, satisfactory in all respects. I'm looking at, it looks like page 49. I may be wrong on the page number because they're sort of munched here. Then he gets a document handed to him that's been signed saying that he'd been unassigned due to ethnic balancing needs. Now, it's true there's other evidence as well, but this is summary judgment. So we have to assume for the sake of our decision that he was removed for ethnic balancing reasons, which is a reason listed as proper in this regulation. So I want to go back to my question. Assuming that that's wrong, that you cannot take ethnic balance into account in making workplace assignments in the prison, assuming that's not permitted, nonetheless, would he not be, would your client not be entitled to qualified immunity because of relying on a regulation that allows that very activity? I believe, going back to what the court was saying earlier, that at the time Alvarado removed Harris from the canteen, this regulation was lawful. And so under the qualified immunity test, a reasonable person in his position at that time in 2002, believing that the regulation was lawful, would have believed that it was lawful for him to remove Harris from the canteen for ethnic balancing reasons. So if that's the case, we wouldn't have to decide any of these other issues? No. Alvarado prevails on the qualified immunity ground. And that's a complete answer to the lawsuit? Yes, I believe so. So going back to my argument, even assuming that Alvarado or that Harris was removed from the canteen for ethnic balancing reasons, this was not unlawful. First, after Harris was removed from the canteen, he was replaced with another black inmate, and thus he was not discriminated against. Secondly, ethnically balancing the canteen furthered the equal protection clause by ensuring that the positions within the canteen were diverse and filled by inmates of different racial backgrounds. This case is similar to mixed motive employment discrimination cases under Title VII. Under Title VII, it's an unlawful employment practice for an employer to discriminate against any individual because of the individual's race, color, religion, or national origin. In mixed motive cases, where there are both legitimate and illegitimate reasons for the employer's action, for an employee to prevail, he must prove that his race, color, religion, or gender was a motivating factor. Here, even if this case is evaluated as a mixed motive case, Alvarado prevails because Harris' race was not a motivating factor. The reasons for removing him, even if they are considered to be ethnic balancing, had nothing to do with Harris' race because he was replaced with another black inmate. Furthermore, the reasons that Alvarado advances for removing Harris from the canteen, that there was a suspicion of inappropriate conduct. That's irrelevant on summary judgment, though, isn't it? We have to take the facts in the light most favorable to the other party. That's correct. So even so, on the first ground alone, then, the fact that he was not discriminated against, the decision was not based upon his race, there is no evidence that race was the motivating factor for this decision. And thus, even if this case is evaluated as a mixed motive case, Alvarado prevails. Alvarado did not discriminate against Harris. When a classification is not based upon race or any suspect class, it is evaluated under the rational basis test. Under the rational basis test, a classification is upheld as long as it is reasonably related to a legitimate penological interest. For a prisoner to state a claim under the Equal Protection Clause, he must satisfy two elements. First, he must prove that he was treated differently from those similarly situated, and secondly, that this difference in treatment was the result of intentional, purposeful discrimination. Thus, to state a claim under the Equal Protection Clause, a plaintiff must prove that he was discriminated against because, intentionally discriminated against because of his membership in a protected class. Why doesn't that apply here? They told him, we got rid of you because you're a black person. That seems like that is exactly what you just said. And the fact that some other African American was put in there, how is that of consequence to the action against him, which was intentional? I mean, he was an African American, and he was told, you lose your job because you're an African American. We're going to get, we're going to start over here. Isn't that race-based discrimination? It could be considered race-based discrimination, and if it were to be considered race-based discrimination, it would be evaluated under the strict scrutiny standard. And our position is that even if this case is evaluated under the strict scrutiny standard, Alvarado still prevails because his actions were a narrowly tailored means in furtherance of prison security. How come it would be evaluated under that standard? What this Johnson v. California case that says strict scrutiny is 2005. When did they fire Harris? In 2002. That's what I thought. So why would we apply the 2005 case instead of Ninth Circuit law that existed in 2002? Your Honor is correct. The 2002 law should be applied, and it is our position that under the 2002 law, it's okay. That's correct, Your Honor. And then going, I guess, a step further would be evaluating. What it said was rational basis review. Exactly. Evaluating Mr. Alvarado's conduct under the rational basis standard, and Mr. Alvarado's conduct satisfies that standard. In closing, the Court should affirm the District Court's judgment granting Alvarado's motion for summary judgment for four reasons. First, even assuming that Alvarado removed Harris from the canteen for ethnic balancing reasons, this was not unlawful because Harris was replaced with another black inmate and thus was not discriminated against. And ethnically balancing the canteen furthered the purpose of the Equal Protection Clause. Secondly, Alvarado did not discriminate against Harris under the rational basis test when he removed him from the canteen. Help me a little with the lying issue. They say to him, we're firing you because we're black, but then they replace him with another black, which tends to show that they were lying when they said, we're firing you because you're black. Is there any case law about that sort of thing? I'm not aware of any, Your Honor. And I would just reiterate the Court's earlier point, which is that, and it actually, this actually goes to the governmental interest for removing Harris for this lying reason, which is that prisons are such a racially fueled environment that racial considerations play a huge part for prison officials, and they must be sure that whatever action they take is not perceived by prisoners. Quite a few Supreme Court justices said, and Johnson just came up shorter than five. Yes. Thank you, counsel. Thank you. Mr. Kramer, your time expired, but we'll give you one minute for rebuttal if you want it. Okay. Thank you. The case just argued is submitted, and we'll be in recess for about 10 minutes.
judges: Molloy, Kleinfeld, Graber